UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
at CLEVELAND

| | |
|---|---|
| THOMAS FOX AND CHARLENE FOX, individually and on behalf of all other Ohio residents similarly situated, | ) ) ) ) |
| | ) Case No.: 1:20-cv-604 |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I. | ) ) ) ) ) ) ) ) |
| Defendant. | ) |

# CLASS ACTION COMPLAINT WITH JURY DEMAND

## Introduction

COME NOW Plaintiffs, Thomas Fox and Charlene Fox (the "Foxes"), individually and on behalf of all others similarly situated, and for their Class Action Complaint against American Family Mutual Insurance Company, S.I. ("AmFam") state and allege the following:

1. On or about September 13, 2019, the Foxes' house located at 37956 Caroline Drive, Avon, Ohio (the "Insured Property") suffered damage covered by policy number 34BL641901, issued to the Foxes by AmFam. The damage to the Insured Property required replacement and/or repair.

2. While AmFam did compensate the Foxes for certain damage to their property, as alleged in detail below, under its actual cash value ("ACV") calculations, AmFam systematically

and improperly depreciated the cost of the labor required to repair the damage to the Insured Property. As a result, AmFam underpaid the Foxes' claim, thus leaving them under-indemnified.

3. By underpaying the Foxes' claim, AmFam denied Plaintiffs access to funds necessary to pick up the pieces during a period of great need and tremendous stress. This is directly contrary to the purpose of insurance – to protect insureds when they are in such need.

4. AmFam's systematic underpayment of claims is not limited to the Foxes' claim. On information and belief, AmFam consistently depreciates the cost of labor from its ACV calculations for structural damage claims made throughout Ohio and has been doing so at all times relevant to the allegations of this Complaint. This includes payments to victims of natural disasters such as tornado and other wind storms, victims of fire, and those who have suffered from any other form of covered real property loss.

5. Ohio law allows an insurer to depreciate the value of building materials, but does not allow the depreciation of the cost of labor. As a result, and as detailed below, by depreciating labor costs from its ACV calculations around Ohio, AmFam has engaged, and continues to engage, in a systematic and unlawful pattern of underpayment of insurance claims.

**Parties**

6. Plaintiffs Thomas Fox and Charlene Fox are residents and citizen of Lorain County, Ohio.

7. Defendant AmFam is organized under the laws of the State of Wisconsin and headquartered in Madison, Wisconsin. AmFam is authorized to sell property insurance policies in the State of Ohio and is engaged in the insurance business in the State of Ohio, including Lorain County.

**Jurisdiction and Venue**

8. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than Defendant's, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant as Defendant has sufficient minimum contacts with the state of Ohio, is authorized to do business in Ohio and has availed itself of the privilege of conducting business in the State of Ohio.

10. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in Summit County, Ohio, which is situated within the Northern District of Ohio, Eastern Division at Cleveland. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendant is a corporation deemed to reside in this District.

**Factual Background**

11. The Foxes contracted with AmFam for an insurance policy providing coverage for certain losses to the Insured Property. At all times relevant to this action, the Insured Property was insured under AmFam Policy No. 34BL641901.

12. On or about September 13, 2019, the Insured Property suffered damage covered by AmFam Policy No. 34BL641901. The damage to the Insured Property required replacement and/or repair. The Foxes timely submitted a claim to AmFam requesting payment for the covered loss.

13. AmFam subsequently confirmed that the Foxes had sustained a covered loss to the Insured Property, and that AmFam was contractually obligated to pay the Foxes' claim for their covered loss pursuant to the terms of their insurance policy.

14. Soon after the loss, AmFam sent an adjuster to inspect the damage to the Insured Property. As set forth in written estimates and correspondence to the Foxes, AmFam's adjuster determined that the Foxes had suffered a covered loss in the amount of $11,508.39 to their home. The estimate included the cost of materials and labor required to complete the repairs. A copy of the estimate and correspondence sent to the Foxes is attached as Exhibit A.

15. In calculating its payment obligations to the Foxes, AmFam subtracted from the adjuster's replacement cost estimate for the home the $1,500.00 deductible provided for in the policy plus an additional $8,864.88 for depreciation. This resulted in a net ACV payment of $1,143.51. The Foxes' policy contains a provision that holds back all costs for roof and siding until completion of that roof and siding work.

16. The estimate upon which AmFam's ACV payment for the Insured Property was based indicates that AmFam depreciated both material costs and labor costs associated with repairs to the house.

**Policy Terms and Claims Settlement Practices**

17. The insurance policy AmFam issued to the Foxes and other members of the proposed class provides replacement cost value ("RCV") coverage for both total loss of and partial loss to covered dwellings and other structures and, in some cases, ACV coverage for certain structural components.

18. At all times relevant to this cause of action, AmFam's custom and practice has been to pay its RCV policyholders the ACV of covered loss claims, net of any applicable deductible. In order to qualify for additional payment and recover the full RCV of the covered loss where RCV coverage is available under the insurance policy, the insured party must repair, rebuild or replace the damaged property within a specific time frame and submit proof to AmFam

4

that the repair or replacement was timely completed. Costs that exceed the amount of the ACV payment are the responsibility of the policy holder.

19. At all times relevant hereto, AmFam's methodology for calculating ACV has been to determine the cost of repairing or replacing the damaged property then deduct depreciation.

20. In the context of insurance law, "depreciation" is defined as "[a] decline in an asset's value because of use, wear, obsolescence, or age." BLACK'S LAW DICTIONARY 506 (9th ed. 2009). Materials used in the repair or replacement of damaged property e.g. roofing shingles or metal, diminished in value over time due to use, wear, obsolescence, and age. As such, these are assets that can be depreciated. In contrast, labor is not susceptible to aging or wear. Its value does not diminish over time. Conceptually, and practically, depreciation simply cannot be applied to labor costs.

21. The basic purpose of property insurance is to provide indemnity to policyholders. To indemnify means to put the insured back in the position he or she enjoyed before the loss – no better and no worse. A policy that provides for payment of the ACV of a covered loss is an indemnity contract because the purpose of the ACV payment is to make the insured whole but not to benefit them because a loss occurred. See APPLEMAN ON INSURANCE 2D § 3823. An RCV policy expands the basic concept of indemnity to include coverage for repairs and replacement costs that exceed the ACV of the loss.

22. In order to recover the RCV of their covered losses, Plaintiffs and other proposed class members are required to pay the out of pocket the difference between the cost of materials and labor necessary to repair or replace the damaged property and the depreciated ACV payment they received from Defendant. While an insurer may lawfully depreciate material costs in calculating the amount of an ACV payment owed to an insured, it may not depreciate labor costs.

5

Defendant's failure to pay the full cost of the labor necessary to repair or replace Plaintiffs' damaged property in the ACV payments left Plaintiffs under-indemnified and underpaid for their losses.

23. Defendant materially breached its duty to indemnify Plaintiffs by depreciating labor costs associated with repairs to the Insured Property in the ACV payment, thereby paying Plaintiffs less than what they were entitled to receive under the terms of the insurance contract.

24. Defendant's withholding of labor costs associated with the repair or replacement of Plaintiffs' property resulted in Plaintiffs receiving payment for their losses in an amount less than Plaintiffs were entitled to receive under their policy. Defendant breached its obligations under the policy by improperly depreciating the cost of labor and other non-materials when calculating its ACV payment obligations. Further, to the extent Defendant belatedly repaid previously withheld labor as depreciation, Plaintiffs, like other class members, have also been damaged by the lost time value of money.

25. The Ohio Department of Insurance and the Sixth Circuit have both determined that it is inappropriate and contrary to industry practice to depreciate labor costs when determining the ACV of structural damage claims.

## Class Action Allegations

26. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs brings this action on their own behalf and on behalf and all others similarly situated. This action satisfies the Rule 23 requirements of commonality, numerosity, and superiority.

27. The proposed class which Plaintiffs seeks to represent is defined as follows:

All AmFam policyholders under any property policies issued by AmFam who made: (1) a structural damage claim for property located in the State of Ohio; and (2) which resulted in an actual cash value payment from which "non-material depreciation" was withheld from the policyholder; or which should have resulted

in an actual cash value payment but for the withholding of "non-material depreciation" causing the loss to drop below the applicable deductible.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate software.

The class period for the proposed class is the maximum time period as allowed by applicable law.

The class excludes all claims arising under policy forms expressly permitting the "depreciation" of "labor" within the text of the policy form and any claims in which the initial actual cash value payment exhausted the applicable limits of insurance. The class also excludes all claims wherein the initial actual cash value payment exhausted the applicable policy limits.

28. Plaintiffs and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as depreciated labor may be later repaid to policyholders upon further adjustment of the claim. However, policyholders who have been subsequently repaid in whole or in part for initially withheld labor depreciation still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, i.e., interest on the amounts improperly withheld, for the time period of withholding.

29. Specifically, under Ohio state law, Plaintiffs and members of the putative class who have been wrongfully deprived of money by the withholding of labor from ACV payments have been damaged in two ways. First, they have been damaged because they have not received the money to which they are entitled. Second, they have been damaged because they have been deprived of the use of that money from the time they should have received it until it was or is paid in full. In Ohio, prejudgment interest compensates the wronged party for the loss of the use of the money he, she or it should have received earlier but for the breach of contract.

7

30. The members of the proposed class are so numerous that joinder of all members is impractical. Plaintiffs reasonably believe that hundreds if not thousands of people geographically dispersed across Ohio have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are identifiable through records maintained by Defendant, and proposed class members may be notified of the pendency of this action by mailed, published and/or electronic notice.

31. Common questions of law and fact exist as to all proposed class members and predominate over any questions affecting only individual proposed class members. The questions of law and fact common to the proposed class include, but are not limited to:

   A. Whether Defendant's insurance policies allow Defendant to depreciate labor in calculating ACV payments for covered losses;

   B. Whether Defendant's insurance policies are ambiguous concerning the depreciation of labor costs in calculating ACV payments, and if so, how Defendant's insurance policies should be interpreted;

   C. Whether Defendant's depreciation of labor costs in making ACV payments for covered losses is a breach of the insurance contracts issued by Defendant to Plaintiffs and other proposed class members.

   D. Whether Plaintiffs and other proposed class members have been damaged by Defendant's breaches, as alleged herein, and if so:

      1. What is the nature and extent of those damages; and

      2. What relief should be awarded to Plaintiffs and other proposed class members.

32. Plaintiffs' claims are typical of the claims of all the proposed class members, as they are all similarly affected by Defendant's custom and practice of unlawful and unjust conduct and their claims are based on such conduct. Further, Plaintiffs' claims are typical of the claims of all proposed class members because their claims arise from the same or similar underlying facts and are based on the same factual and legal theories. Plaintiffs are no different in any material

respect from any other member of the proposed class – all members of the proposed class had labor unlawfully depreciated by AmFam.

33. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the class they seek to represent. Plaintiffs have retained counsel who are competent and experienced in class action litigation and complex insurance-related cases and will fairly and adequately represent the interests of the proposed class. Plaintiffs and their counsel will prosecute this action vigorously.

34. A class action is superior to all available methods for the fair and efficient adjudication of this controversy. Joining all proposed class in one action is impracticable, and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most class members, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Moreover individual litigation could result in inconsistent adjudications of common issues of law and fact.

35. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and proposed class members. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

36. No unusual difficulties are anticipated in the management of this case as a class action.

37. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the proposed class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the proposed class as a whole.

## Count I – Breach of Contract

38. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

39. Defendant entered into policies of insurance with Plaintiffs and other members of the proposed class. These policies govern the relationship between Defendant and Plaintiffs and other proposed class members, as well as the manner in which claims for covered losses are handled.

40. The insurance policies at issue were drafted by Defendant and are essentially identical in all respects material to this litigation.

41. Plaintiffs and other proposed class members complied with all material provisions and fulfilled their respective duties with regard to their policies.

42. The policies of insurance Defendant issued to Plaintiffs and other proposed class members state that in the event of a loss Defendant may fulfill its initial contractual obligation to an insured party by paying the ACV of the loss. At all times relevant hereto, Defendant's custom and practice has been, and is, to make such payments based upon Defendant's calculation of the ACV for the loss, net of any applicable deductible.

43. Defendant breached its contractual duty to pay Plaintiffs and other proposed class members the ACV of their claims by unlawfully depreciating labor costs.

44. Defendant's actions in breaching its contractual obligations to Plaintiffs and other proposed class members benefitted, and continue to benefit, Defendant. Likewise, Defendant's actions damaged, and continue to damage, Plaintiffs and other proposed class members.

45. Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and other proposed class members.

46. Accordingly, Plaintiffs and other proposed class members are entitled to recover damages sufficient to make them whole for the amounts Defendant unlawfully withheld from their ACV payments as labor cost depreciation.

## **Demand for Relief**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request that the Court grant the following relief:

A. Certify that this lawsuit may be prosecuted as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Appoint Plaintiffs and Plaintiffs' counsel to represent the proposed class;

C. Declare that Defendant has breached its contractual obligations to the Plaintiffs and the proposed class by depreciating labor costs;

D. Award Plaintiffs and the proposed class damages in an amount equal to the total amount of depreciated labor costs withheld on Plaintiff's and proposed class members' claims for ACV benefits that has not been paid to Plaintiffs and proposed class members;

E. Award Plaintiffs and the proposed class prejudgment and post-judgment interest on their liquidated and unliquidated damages;

F.      Enjoin Defendant from engaging in the unlawful and unjust conduct complained of herein;

G.      Award the proposed class all expenses and costs of this action, and require AmFam to pay the costs and expenses of class notice and claims administration;

H.      Trial by Jury; and

I.      Any and all other relief to which Plaintiffs and the other proposed class members appear to be entitled.

Respectfully submitted,

*/s/ Stephen G. Whetstone*
STEPHEN G. WHETSTONE (0088666)
Email: steve@whetstonelegal.com
**Whetstone Legal, LLC**
P.O. Box 6
2 N. Main Street, Unit 2
Thornville, Ohio 43076
Telephone: 740.974.7730
Facsimile:  614.829.3070

and

ERIK D. PETERSON (KY Bar 93003)*
**Mehr, Fairbanks & Peterson**
 **Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
Email: edp@austinmehr.com

*Counsel for Plaintiffs and
the Proposed Class*

*To be admitted *pro hac vice*.